IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | 8:21-CV-37 |
| vs. | MEMORANDUM AND ORDER |
| REX L. OLSON, | |
| Defendant. | |

This matter is before the Court on the government's motion for summary judgment (filing 27). For the reasons outlined below, this motion will be granted.

## I. BACKGROUND

The government has brought this civil action to reduce to judgment federal tax assessments made against the defendant Rex Olson. Filing 1 at 14. The uncontroverted facts of this case are relatively straightforward. But before the Court summarizes those facts, it must briefly discuss the procedural posture of the pending motion. Pursuant to NECivR 56.1, a party moving for summary judgment must include in its brief a statement of material facts about which the movant contends there is no dispute, and the party opposing summary judgment must include in its brief a concise response to that statement of facts, noting any disagreement. An opposing party's response must also include pinpoint references to materials that support his or her factual responses. NECivR 56.1(b)(1). Properly referenced material facts in the movant's statement are considered admitted unless controverted in the opposing party's response. *Id*.; see *Bunch v. Univ. of Ark. Bd. of Trs.*, 863 F.3d

1062, 1067 (8th Cir. 2017) (status as pro se litigant does not excuse noncompliance with local rules regarding summary judgment).

Here, Olson failed to concisely respond to the government's statement of material facts. Instead, his only response to the motion for summary judgment was to file an amended answer (filing 31) in which he argues that the government failed to state a claim, asserts the affirmative defense of laches, and challenges the Court's jurisdiction and venue. *See* filing 31 at 1-2. The amended answer also includes some exhibits, though Olson fails to explain how these documents are relevant to the current motion or responsive to the government's statement of facts. *See* filing 31 at 5-8. And Olson's original answer (filing 6) only provides general denials and admissions to the allegations in the government's complaint along with a few conclusory (and somewhat indiscernible) allegations of his own. Even if the Court construes Olson's filings liberally in consideration of his pro se status, he has failed to respond to the government's statement of material facts or provide materials which directly controvert these facts. Therefore, the government's statement of material facts is considered admitted, and those facts establish the following.

A delegate of the Secretary of the Treasury of the United States has made assessments against Olson for outstanding federal income tax, employment tax, unemployment tax, trust fund recovery penalty, and corresponding interest and penalties. Filing 28 at 4-18. Patrick Ellsworth, a Revenue Officer with the Internal Revenue Service (IRS), has reviewed the Form 4340—"Certificate of Assessments, Payments, and Other Specified Matters"—for each assessment in conjunction with data from the IRS Integrated Data Retrieval System (IRDS) and has provided a declaration summarizing Olson's total liability in each category. *See* filing 29 at 1-4. These

totals reflect "amounts assessed over time, payments made, credit applied, and calculation of amounts that accrue over time." Filing 29 at 2.

This evidence demonstrates that Olson filed federal income tax returns with the IRS for tax years 2007, 2008, 2009, 2011, 2012, 2013, and 2014. Filing 28 at 4. In the last three of those years, Olson understated his income and the amount of taxes owed. Filing 28 at 4; filing 29 at 4. Additionally, although he filed those returns, the assessments show that Olson failed to pay his income tax liabilities for those years in full, even after receiving notices of the assessments and demands for payment. Filing 28 at 5; filing 29 at 5; *see, e.g.*, filing 29-1 at 2, 7. According to Ellsworth, the Forms 4340 and IRDS demonstrate that, as of February 17, 2022, Olson was "indebted to the United States in the total amount of $367,573.30" for his federal income tax liability. Filing 29 at 4-6.

Olson also filed federal employment tax returns (Forms 941) with the IRS on behalf of Rex Olson Plantscapes for the quarterly tax periods ending December 31, 2000, through September 30, 2003. Filing 28 at 5-8; filing 29 at 6-8. However, in addition to being untimely, three of the returns understated the amount of taxes owed. Filing 28 at 6-7; filing 29 at 6; *see, e.g.*, filing 29-17. And while Olson reported that Rex Olson Plantscapes owed employment tax in each of these Form 941 returns, he failed to pay these reported liabilities. Filing 28 at 6; filing 29 at 6 Ultimately, this liability was assessed against Olson d/b/a Rex Olson Plantscapes, and despite receiving notices of those assessments and demands for payment this outstanding liability still totaled $246,828 as of February 17, 2022. Filing 28 at 7-8; filing 29 at 7-8.

Likewise, the assessments indicate that Olson d/b/a Rex Olson Plantscapes failed to file timely federal unemployment tax returns (Forms 940)

3

for tax years 2002 and 2003. Filing 28 at 8; filing 29 at 8. According to Ellsworth, when Olson did file these returns, he reported owing unemployment tax for each tax year. Filing 29 at 8. However, Olson failed to pay this liability, even after receiving notices and demands for payment. Filing 28 at 8-9; filing 29 at 8. Ellsworth has determined that, as of February 17, 2022, Olson's outstanding balance for these federal unemployment taxes, including interest and penalties, totaled $3,840.97. Filing 28 at 9; filing 29 at 8-9.

In 2006, Plantscapes, LLC was formed under Nebraska law, and Olson was the sole member. Filing 28 at 9-10; filing 28-1; *see* filing 30-1. "[F]or tax periods ending March 3[1], 2007, through June 30, 2008," Olson failed to file quarterly employment tax returns for the company. Filing 28 at 11; filing 29 at 9-10. Untimely returns *were* filed "for tax periods ending September 30, 2008, through December 31, 2008," and "Olson reported owing employment tax on each." Filing 28 at 10; filing 29 at 9. Ultimately, assessments were made against Olson for all of Plantscapes, LLC's outstanding employment tax liabilities, but Olson failed to pay despite receiving notice of the assessments and demands for payment. Filing 28 at 9-12; filing 29 at 9-10. Based on the corresponding Forms 4340 and IRDS data, Ellsworth determined that "as of February 17, 2022, Olson is indebted to the United States in the amount of $144,102.40 for his federal employment tax liabilities for the quarterly tax periods ending March 31, 2007, through December 31, 2008." Filing 29 at 10.

Finally, in March 2015, Ecosgreen, LLC was organized under the laws of Nebraska, and Olson was listed as the sole member and registered agent. Filing 28 at 10; filing 28-2; *see* filing 30-3. In October 2016, Ellsworth interviewed Olson about "income, Social Security and Medicare taxes," known as trust fund taxes, that Ecosgreen withheld from the wages of its employees

4

but failed to pay over to the IRS "[f]or the quarterly periods ending June 30, 2015, through June 30, 2016." Filing 29 at 10-11. After Olson failed to comply with the demands for payment made at this interview, a delegate of the Secretary of the Treasury made assessments against Olson for these trust fund recovery penalties, and additional notices and demands were sent to Olson. Filing 28 at 17; filing 29 at 11-12. According to Ellsworth, as of February 17, 2022, the outstanding balance of Olson's trust fund recovery liabilities for these quarterly tax periods was $42,514.78. Filing 28 at 16-18; filing 29 at 12. The government has now moved for summary judgment, arguing that these uncontroverted material facts establish that Olson's unpaid federal tax liabilities should be reduced to judgment as a matter of law.

## II. STANDARD OF REVIEW

Summary judgment is proper if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). The movant bears the initial responsibility of informing the Court of the basis for the motion, and must identify those portions of the record which the movant believes demonstrate the absence of a genuine issue of material fact. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). If the movant does so, the nonmovant must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial. *Id.*

On a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts. *Id.* Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the evidence are jury functions, not those of a judge. *Id.* But the nonmovant must do more than simply show that

5

there is some metaphysical doubt as to the material facts. *Id.* In order to show that disputed facts are material, the party opposing summary judgment must cite to the relevant substantive law in identifying facts that might affect the outcome of the suit. *Quinn v. St. Louis Cty.*, 653 F.3d 745, 751 (8th Cir. 2011). The mere existence of a scintilla of evidence in support of the nonmovant's position will be insufficient; there must be evidence on which the jury could conceivably find for the nonmovant. *Barber v. C1 Truck Driver Training, LLC*, 656 F.3d 782, 791-92 (8th Cir. 2011). Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Torgerson*, 643 F.3d at 1042.

## III. DISCUSSION

According to the government, the unsupported allegations and general denials in Olson's answers do not create a genuine issue of material fact. Therefore, where it has presented uncontroverted evidence establishing Olson's liability, the government argues it is entitled to judgment as a matter of law. Filing 28 at 3. The Court agrees.

In a civil tax deficiency case, the burden of proof is generally on the taxpayer to disprove, by a preponderance of the evidence, the government's assessments, which are otherwise presumed correct. *Mattingly v. United States*, 924 F.2d 785, 787 (8th Cir. 1991). In such actions, the IRS Form 4340 is an "appropriate source[] evidencing the IRS's assessment and notice of tax arrears." *United States v. Meyer*, 914 F.3d 592, 594 (8th Cir. 2019) (quoting *Perez v. United States*, 312 F.3d 191, 195 (5th Cir. 2002) (per curiam)) (alteration in original). Here, the government has provided sufficient evidence to establish the validity of the assessments made against Olson. This evidence includes:

6

1. Certified Forms 4340 establishing Olson's federal <u>income tax</u> liabilities, including interest and penalties, for the 2007 (filing 29-1), 2008 (filing 29-2), 2009 (filing 29-3), 2011 (filing 29-4), 2012 (filing 29-5), 2013 (filing 29-6), and 2014 (filing 29-7) tax years.

2. Certified Forms 4340 establishing the federal <u>employment tax</u> liabilities, including interest and penalties, of Olson d/b/a Plantscapes for the quarterly tax periods ending on 12/31/2000 (filing 29-8), 3/31/2001 (filing 29-9), 6/30/2001 (filing 29-10), 9/30/2001 (filing 29-11), 12/31/2001 (filing 29-12), 3/31/2002 (filing 29-13), 6/30/2002 (filing 29-14), 9/30/2002 (filing 29-15), 12/31/2002 (filing 29-16), 3/31/2003 (filing 29-17), 6/30/2003 (filing 29-18), and 9/30/2003 (filing 29-19).

3. Certified Forms 4340 establishing the federal <u>unemployment tax</u> liabilities, including interest and penalties, of Olson d/b/a Plantscapes for the 2002 (filing 29-20) and 2003 (filing 29-21) tax years.

4. Certified Forms 4340 establishing the federal <u>employment tax</u> liabilities, including interest and penalties, of Olson d/b/a Plantscapes, LLC for the quarterly tax periods ending on 3/31/2007 (filing 29-22), 6/30/2007 (filing 29-23), 9/30/2007 (filing 29-24), 12/31/2007 (filing 29-25), 3/31/2008 (filing 29-26), 6/30/2008 (filing 29-27), 9/30/2008 (filing 29-28), and 12/31/2008 (filing 29-29).

5. Certified Forms 4340 establishing the federal <u>trust fund tax</u> liabilities, including interest and penalties, of Olson d/b/a Ecosgreen, LLC for the quarterly tax periods ending on 6/30/2015 (filing 29-31), 9/30/2015 (filing 29-32), 12/31/2015 (filing 29-33), 3/31/2016 (filing 29-34), and 6/30/2016 (filing 29-35).

These Forms 4340 are presumptively correct, and "show[] amounts that have been assessed . . . as of the date the Form 4340 [was] issued." Filing 29 at 2. However, they do not "reflect [the] unassessed interest that continue[d] to accrue under the provisions of the internal revenue code" *after* the assessments were issued. Filing 29 at 2. But interest accrues on unpaid assessments as a matter of law. Therefore, once the government proves tax liability, it does not need to provide additional evidence to prove the amount of interest that is owed by operation of statute. 26 U.S.C. § 6601; *see United States v. Hammon*, 277 Fed. Appx. 560, 569 (6th Cir. 2008). Nevertheless, Ellsworth reviewed IDRS data to determine the total amount of Olson's unassessed accruals, including statutory interest, as of February 17, 2022. Filing 29 at 2. In this way, the government provided more than sufficient evidence to establish it is entitled to summary judgment on the tax liabilities outlined above, including the "accrued but unassessed statutory interest," as of February 17, 2022. *See* filing 29 at 5; filing 28 at 21.[1]

Still, in his original answer, Olson denies that he received notice of these assessments and demands for payment.[2] *See* filing 6 at 1. However, such conclusory and self-serving denials are insufficient to create a genuine issue of material fact, especially where the government has offered *evidence* demonstrating that Olson did receive such notices and demands. Specifically, each Form 4340 has *at least* one entry indicating Olson was sent a "Statutory

---

[1] In the same way, the government is not required to provide any additional evidence to prove the unassessed "interest and statutory additions accruing *from* February 27, 2022" to get a judgment for such interest. Filing 28 at 26 (emphasis added).

[2] For some of the notices and demands, Olson's original answer simply asserts that it is "unknown to him" whether he received them. Filing 6 at 1.

8

Notice of Balance Due." According to Ellsworth, these entries indicate that the IRS sent Olson notice of the assessment and made a demand for payment on or about the date the assessment was completed. *See* filing 29 at 5-13. Additionally, Ellsworth testified that, during the October 2016 interview, he demanded payment of Ecosgreen's tax liability. Filing 29 at 11. As such, there is no genuine issue of material fact as to whether Olson received notice and demand for each assessment.

Even if Olson's barebones denials did create a genuine issue of material fact as to whether he received notice of the assessments, this would not be sufficient to overcome summary judgment. 26 U.S.C. § 6303 requires notice and demand "when the government wishes to proceed administratively, such as by filing a tax lien . . . or by administrative levy." *Anuforo v. Comm'r of Internal Revenue,* 614 F.3d 799, 805 (8th Cir. 2010). But "notice and demand are not required when the government files a civil action because the filing of the action allows the taxpayer sufficient time to consider and pay any tax that is due before a judgment or lien can be placed on his property." *Id*. As such, the certified Forms 4340 and Ellsworth's testimony, both of which illustrate the validity of the assessment's against Olson, are sufficient for the government to establish a prima facie case in support of summary judgment.

And Olson has failed to provide any evidence that a reasonable jury could find disputes the validity of the government's assessments against him. This is true even if the Court liberally construes the exhibits and allegations in his answer and amended answer as responsive to the government's motion for summary judgment. First, in his original answer, Olson directs the Court to an apparent criminal case, stating "PLEASE see case ID : CR 13 1126 State of Nebraska vs Kristina Taylor and partners bookkeeping. Fraud of monies for

9

accounts pay, and fed tax allocations." Filing 6 at 1. Additionally, attached to his amended answer is an Omaha Police Department Incident Report from September 2012, in which Olson allegedly reported that "he discovered someone was diverting funds out of his business account to a personal account" since December 2006. Filing 31 at 5. His amended answer also includes documents, which he alleges are from his former lawyer John Wilke, indicating that Wilke appeared in court on his behalf in a 2014 criminal case involving Taylor, who is described in the documents as Plantscapes' bookkeeper. Filing 31 at 6-8.

However, none of these documents provide any further information on the case against Taylor, including the issues presented or the outcome. At most, the Court can *guess* that Olson is trying to argue that Taylor, while acting as his bookkeeper, failed to properly convey Plantscapes' federal employment taxes to the IRS. But no reasonable jury could conceivably find for Olson on this theory based on the materials in the record. At most, he has provided a scintilla of evidence in furtherance of this position. And the same can be said about Olson's conclusory assertion in his original answer that "Midwest Accounting" was responsible for relaying Ecosgreen's trust fund taxes to the IRS. *See* filing 6 at 1. Simply stated, Olson's "unsupported, self-serving allegations and denials" that he failed to pay his federal tax liability because he was defrauded by a third party "are insufficient to create a genuine issue of material fact." *Anuforo*, 614 F.3d at 807.

In a similar vein, Olson's attempts to establish that he is not the responsible party for the tax liabilities of Rex Olson Plantscapes; Plantscapes, LLC; and Ecosgreen, LLC are also ineffective. First, the record indicates that Olson filed various Form 941 and Forms 940 employer returns for tax years

2000 through 2003. Filing 29 at 6, 8; *see, e.g.*, filing 29-36. And according to Ellsworth and the Forms 4340, the subsequent employment and unemployment tax assessments based on these filings were made against Olson d/b/a Rex Olson Plantscapes. Filing 29 at 6. This evidence sufficiently establishes the government's claim that the tax liability for this period was incurred by Olson "as sole proprietor" of Rex Olson Plantscapes. Filing 28 at 5.

Since a sole proprietor's personal assets and the proprietorship's business assets are legally a single financial estate—meaning the sole proprietor is personally liable for all debts and obligations of the business— this evidence also establishes that Olson is personally liable for the outstanding tax liability of Rex Olson Plantscapes. *See Minn. Laborers Health & Welfare Fund v. Scanlan*, 360 F.3d 925, 928 (8th Cir. 2004) (citing *Trs. of Amalgamated Ins. Fund v. Sheldon Hall Clothing, Inc.*, 862 F.2d 1020, 1024-25 (3d Cir. 1988)). And Olson's conclusory and unsupported assertions in his answers that he was not the sole proprietor of Rex Olson Plantscapes are insufficient to create a genuine issue of material fact. *See* filing 6; filing 31; *Copeland v. ABB, Inc.*, 521 F.3d 1010, 1012 (8th Cir. 2008) (holding that "the respondent must do more than rely on allegations or denials in the pleadings" to overcome summary judgment).

Likewise, the government has established, by a preponderance of the evidence, that Olson is personally liable for the 2007 and 2008 employment tax liability of Plantscapes, LLC. During these tax periods, a non-corporation entity with a *single owner* was "disregarded as an entity separate from its owner" for tax purposes unless the entity elected otherwise. 26 C.F.R. § 301.7701-3 (effective Dec. 8, 2006, to Apr. 7, 2020). Here, according to the government's uncontroverted evidence, Olson was the sole owner of

11

Plantscapes, LLC. The Articles of Organization filed with the Nebraska Secretary of State list Olson as the company's "sole member." Filing 28-1. And as of 2016, Olson continued to hold himself as the company's "100% owner" in bank documentation. *See* filing 30-1. Therefore, where there is no evidence in the record that Plantscapes, LLC elected to be regarded as an entity separate from Olson for tax purposes, as the company's sole member, he is personally liable for its employment tax liability. And again, Olson's self-serving claims that he was *not* the sole member of Plantscapes, LLC, filing 6 at 1, and that Mardelle Olson was the majority owner-investor of the company, filing 31 at 1, are not enough to create a genuine issue of material fact where he has provided no *evidence* supporting these claims.

In the same way, the government's uncontroverted evidence establishes that Olson is the "responsible person" for Ecosgreen, LLC's unpaid trust fund recovery penalty assessments. Employers are required to withhold from their employees' paychecks three federal taxes: income, Social Security, and Medicare. *Westerman v. United States*, 718 F.3d 743, 747 (8th Cir. 2013) (citing I.R.C. §§ 3101, 3102(a), 3402(a)(1), 3403). This money is the trust fund portion of federal employment taxes because the employer holds it in trust for the federal government until relaying it to the IRS. *Id.* (citing I.R.C. § 7501). And under I.R.C. § 6672, the individual responsible for collecting such tax, or truthfully accounting for and paying over the trust fund portion of federal employment taxes, may be personally liable to the IRS for a willful underpayment of the trust fund portion. *Id.*

An officer or employee qualifies as a "responsible person" in this context if they have "the status, duty and authority to avoid the corporation's default in collection or payment of the taxes." *Colosimo v. United States*, 630 F.3d 749,

12

752 (8th Cir. 2011). Accordingly, it may be relevant that a person has check-signing authority for the company, decides which entities the company will pay, borrows money and makes large expenditures on the company's behalf, and signs the company's federal income tax returns. *Id*. Further, "[a] person willfully fails to pay over taxes if he acts or fails to act consciously and voluntarily, *knowing* or intending that as a result of his action or inaction trust funds belonging to the government will not be paid, but instead will be used for other purposes." *Id*. (emphasis added). In this way, "willfully does not connote a bad or evil motive, but rather means a voluntary, conscious, and intentional act, such as the payment of other creditors in preference to the United States." *Id*. Therefore, while it is true that willfulness is generally a question of fact, 'if a responsible person knew of payments to other creditors after he was aware of the failure to pay over withholding taxes to the government, his actions are willful as a matter of law." *Id*.

In 2015, Olson filed a Certificate of Organization for Ecosgreen, LLC with the Nebraska Secretary of State as its "organizer." Filing 28-2 at 1. In the company's simultaneously filed Statement of Authority, Olson was granted "full authority, without limitations," to (1) execute an instrument transferring real property held in the name of the company, or (2) enter into other transactions on behalf of, or otherwise act for or bind, the company. Filing 28-2 at 2. Olson signed this Statement of Authority as "Manager of the Company." Filing 28-2 at 2. And in Ellsworth's 2016 interview, Olson identified himself as the manager and owner of Ecosgreen who, during the relevant periods, determined the financial policy for the business, directed or authorized payments of bills and creditors, authorized payroll, and authorized the assignment of electronic banking PINS and passwords. Filing 29-30.

13

Further, Olson signed Form 941 as the "owner" of Ecosgreen, *see, e.g.*, filing 29-50, listed himself as the "100% owner" of Ecosgreen in bank documentation, filing 30-4, and consistently exercised his check-signing authority for the company. *See, e.g.*, filing 30-5 at 4. Therefore, despite Olson's conclusory and unsupported claims that he was not the sole member of the company, filing 6 at 1, the *evidence* in the record establishes that Olson had the status, duty, and authority to ensure Ecosgreen avoided default in the payment of its taxes, meaning he was the responsible person for Ecosgreen's employment tax liability at issue.

The facts also establish that, as the responsible person, Olson willfully underpaid Ecosgreen's 2015 and 2016 trust fund taxes. Specifically, the evidence establishes that Olson authorized payments from Ecosgreen's funds to creditors while knowing that he owed trust fund taxes. Prior to 2015, Olson had filed at least fourteen Forms 941 with the IRS on behalf of his other businesses. *See generally* filing 29. And after Olson failed to pay Plantscapes, LLC's employment taxes (both trust fund and non-trust fund), he requested and received, in 2011 and 2012, installment plans to pay these liabilities. *See* filing 29 at 12-13. If that is not enough to establish Olson's general knowledge of his responsibility to pay trust fund taxes for his company, Ellsworth also specifically demanded Olson pay this liability during his October 2016 interview, and this demand was followed by an official notice of the assessment for these taxes. Filing 29 at 11.

Additionally, Olson knew of payments Ecosgreen made to other creditors *after* he was aware of his failure to pay over the company's trust fund taxes. In fact, Olson signed checks from Ecosgreen's account totaling over $51,000 after Ellsworth demanded payment of the trust fund taxes, and many of these

14

payments also occurred after Olson received official notice of the assessment. *See* filing 28 at 16-17. Thus, the government has presented sufficient, uncontroverted evidence for the Court to conclude that Olson is a responsible person for purposes of Ecosgreen's trust fund taxes, and that Olson's non-payment of these taxes was willful as a matter of law. NECivR 56.1.

Finally, in his proposed amended answer, Olson asserted a laches defense while also "den[ying] the allegations of jurisdiction and venue." First, any venue or personal jurisdiction defense is not properly in front of the Court because Olson failed to assert these in his original answer or an amended answer allowed by the Court under Fed. R. Civ. P. 15(a)(1). *See* Fed. R. Civ. P. 12(h)(1); filing 6; filing 31. To the extent Olson's amended answer could be construed as challenging this Court's subject matter jurisdiction, that argument is meritless, as the Court has jurisdiction to "render such judgments and decrees as may be necessary and appropriate for the enforcement of the internal revenue laws." 26 U.S.C. § 7402 (a); *see also* 28 U.S.C. §§ 1340 and 1345. As for the laches defense, this circuit has "recognized the long-standing rule that laches does not apply in actions brought by the United States" to exercise a sovereign right. *Bostwick Irrigation Dist. v. United States*, 900 F.2d 1285, 1291 (8th Cir. 1990); *see United States v. Hamed*, 976 F.3d 825, 831 (8th Cir. 2020). Therefore, this defense is inapplicable in the instant case where the government seeks to enforce its sovereign right to assess and collect taxes. *See United States v. Wurdemann*, 663 F.2d 50, 51 (8th Cir. 1981).[3]

---

[3] Even considering the defenses raised and the exhibits attached to Olson's amended answer, the Court still finds that the government's motion for summary judgment should be granted. Therefore, the government's motion to strike Olson's amended answer (filing 32) will be denied as moot.

15

In sum, at this stage, Olson failed to provide evidence contesting the validity of the assessments, and his "unsupported, self-serving allegations and denials are insufficient to create a genuine issue of material fact" as to whether he is responsible for the tax liability at issue. *See Anuforo*, 614 F.3d at 807. Since there is simply no evidence from which a rational trier of fact could find for Olson, the government is entitled to judgment as a matter of law on all counts. Accordingly,

IT IS ORDERED:

1. The plaintiff's motion for summary judgment (filing 27) is granted.

2. Judgment will be entered in favor of the plaintiff, and against the defendant, in the principal amount of $804,859.45, plus accrued prejudgment interest and statutory additions.

3. On or before July 20, 2022, the plaintiff shall serve and file a statement calculating interest and statutory additions accrued since February 17, 2022 and explaining the basis for that calculation.

4. The Clerk of the Court shall set a case management deadline for July 20, 2022, with the following docket text: Check for calculation of prejudgment interest and statutory additions.

5. Upon receipt of the plaintiff's calculation of prejudgment interest and statutory additions, a separate judgment will be entered.

6. The plaintiff's motion to strike (filing 32) is denied as moot.

Dated this 13th day of July, 2022.

BY THE COURT:

John M. Gerrard
United States District Judge